1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11    JIM CAGE,                                Case No.: 1:22-cv-01429-CDB (PC)

12                      Plaintiff,             **ORDER GRANTING DEFENDANT'S
                                               MOTION FOR SUMMARY JUDGMENT**
13            v.
                                               (Doc. 39)
14    A. JOHNSON, et al.,

15                      Defendants.

16

17        Plaintiff Jim Cage is proceeding pro se and *in forma pauperis* in this civil rights action

18    pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's Eighth Amendment excessive

19    force claim against Defendant Rojas.

20        **I.      INTRODUCTION**[1]

21        The Court issued its Discovery and Scheduling Order on January 25, 2024. (Doc. 26.)

22        On January 16, 2025, Defendant filed a motion for summary judgment. (Doc. 39.)

23    Defendant's motion included a *Rand*[2] warning (Doc. 39-15), addressing the requirements

24    concerning an opposition to a motion for summary judgment. Despite the passage of more than

25    21 days, Plaintiff failed to file an opposition or statement of non-opposition to the motion.

26    _____

27    [1] All parties have consented to the jurisdiction of the assigned magistrate judge for all further proceedings, including
      entry of judgment. (*See* Doc. 29.)

28    [2] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

1    Accordingly, on February 19, 2025, the Court issued its Order to Show Cause (OSC) in

2    Writing Why Sanctions Should Not Be Imposed for Plaintiff's Failure to File an Opposition or

3    Statement of Non-Opposition. (Doc. 40.) Plaintiff was ordered to respond to the OSC within 14

4    days, or, alternatively, to file an opposition or statement of non-opposition to Defendant's motion

5    for summary judgment. (*Id*.)

6    On March 19, 2025, Plaintiff filed an untitled document, informing the Court he had been

7    transferred to High Desert State Prison and was seeking an extension of time. (Doc. 41.)

8    On March 20, 2025, the Court issued its Order Granting Request for Extension of Time

9    Within Which to File Opposition to Motion for Summary Judgment. (Doc. 42.) Plaintiff was

10    ordered to file any opposition within 21 days. (*Id*. at 3.) More than 21 days plus time for mailing

11    elapsed, yet Plaintiff failed to file an opposition.

12    On April 25, 2025, Defendant filed a notice concerning Plaintiff's failure to respond to the

13    summary judgment motion and requested summary judgment be granted. (Doc. 43.)

14    As of the date of entry of this order, Plaintiff has yet to make any filings addressing

15    Defendant's pending motion for summary judgment.  Given the foregoing, the Court considers

16    Defendant's summary judgment motion to be unopposed. *See* Local Rule 230(c).

17    **II.    APPLICABLE LEGAL STANDARDS**

18    ***Motions for Summary Judgment***

19    Summary judgment is appropriate when it is demonstrated that there "is no genuine

20    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

21    Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by

22    "citing to particular parts of materials in the record, including depositions, documents,

23    electronically stored information, affidavits or declarations, stipulations (including those made for

24    purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R.

25    Civ. P. 56(c)(1)(A).

26    Summary judgment should be entered, after adequate time for discovery and upon motion,

27    against a party who fails to make a showing sufficient to establish the existence of an element

28    essential to that party's case, and on which that party will bear the burden of proof at trial. See

1    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an

2    essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

3    If the moving party meets its initial responsibility, the burden then shifts to the opposing party to

4    establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec.*

5    *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the

6    existence of this factual dispute, the opposing party may not rely upon the allegations or denials

7    of their pleadings but is required to tender evidence of specific facts in the form of affidavits,

8    and/or admissible discovery material, in support of its contention that the dispute exists or shows

9    that the materials cited by the movant do not establish the absence of a genuine dispute. *See* Fed.

10   R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the

11   fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

12   governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv.,*

13   *Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Further, the opposing

14   party must also demonstrate that the dispute is genuine, i.e., the evidence is such that a reasonable

15   jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818

16   F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute,

17   the opposing party need not establish a material issue of fact conclusively in its favor. It is

18   sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

19   parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the

20   "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see

21   whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P.

22   56(e) advisory committee's note on 1963 amendments).

23        In resolving the summary judgment motion, the evidence of the opposing party is to be

24   believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the

25   facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475

26   U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

27   obligation to produce a factual predicate from which the inference may be drawn. *See Richards v.*

28   *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th

1    Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

2    show that there is some metaphysical doubt as to the material facts.... Where the record taken as a

3    whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

4    issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

5          A court may grant an unopposed or inadequately opposed motion for summary judgment

6    if the moving papers are themselves sufficient to warrant granting the motion and do not on their

7    face reveal a genuine issue of material fact. *See Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950

8    (9th Cir. 1993).

9                                    ***Eighth Amendment Excessive Force***

10          "[T]he unnecessary and wanton infliction of pain on prisoners constitutes cruel and

11    unusual punishment" in violation of the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 328

12    (1986) (internal quotation marks & citation omitted). As courts have succinctly observed,

13    "[p]ersons are sent to prison as punishment, not *for* punishment." *Gordon v. Faber*, 800 F. Supp.

14    797, 800 (N.D. Iowa 1992) (quoting *Battle v. Anderson*, 564 F.2d 388, 395 (10th Cir. 1977))

15    (citation omitted) (emphasis in original), *aff'd* 973 F.2d 686 (10th Cir. 1992). "Being violently

16    assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses

17    against society." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks &

18    citation omitted).

19          A correctional officer engages in excessive force in violation of the Cruel and Unusual

20    Punishments Clause if he (1) uses excessive and unnecessary force under all the circumstances,

21    and (2) "harms an inmate for the very purpose of causing harm," and not "as part of a good-faith

22    effort to maintain security." *Hoard v. Hartman*, 904 F.3d 780, 788 (9th Cir. 2018). In other

23    words, "whenever prison officials stand accused of using excessive physical force …, the core

24    judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore

25    discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7

26    (1992). In making this determination, courts may consider "the need for application of force, the

27    relationship between that need and the amount of force used, the threat reasonably perceived by

28    the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.*

1    at 7. Courts may also consider the extent of the injury suffered by the prisoner. *Id.* However, the

2    absence of serious injury is not determinative. *Id.*

3        **III.    PLAINTIFF'S CLAIMS**

4        In his complaint, Plaintiff alleged as follows:

5
6
7
8
9
10
11
12
> Plaintiff alleges that on May 13, 2022, at about 8:22 p.m., in the Security Housing Unit of Unit 4A-1, he refused to return to his cell "due to a visiting issue." (Doc. 1 at 4.) Plaintiff asked to speak to the visiting sergeant or lieutenant of the facility, informing custody officers of his complaint and "the affect that the complaints with [his] visits" were having on his mental health. (*Id.*) Plaintiff alleges he explained two previously scheduled visits were "prematurely discontinued" due to custody staff's "lack of communication." (*Id.*) According to an Incident Report Package, the Senior Psychologist approached Plaintiff's holding cell and "clinical intervention began" at some earlier point. (*Id.* at 4-5.) Plaintiff asserts "no footage or audio" of the clinical intervention exists by Defendant Ward "which initiated a cool down period, which ultimately resulted in the controlled use of force." (*Id.* at 5.) A cell extraction was initiated by Defendants Johnson, Roque, and Cortez. (*Id.*)

13
14
15
16
17
18
19
20
21
22
23
> The cell extraction team entered the holding cell at about 8:40 p.m., "after (3) three-three second burst of MK-9 (O/C) vapors." (Doc. 1 at 5.) Plaintiff contends he was forced up against the rear bars of the holding cell and was "unable to surrender into a prone position." (*Id.*) The cell was crowded and he "was helpless, restrained up against the holding cell bars" by Correctional Officers Rojas, Arias, Freitas and Calhoun. (*Id.*) Defendant Rojas "violently and intentionally" assaulted and battered Plaintiff with "(16) hammer like strikes" to his left arm. (*Id.*) Plaintiff alleges Rojas delivered nine of the "forceful vicious blows" by way of his baton, "briefly pausing to allow Plaintiff to prone at becoming against a defenseless, non-threatening inmate," before delivering another seven blows with the baton to the same area. (*Id.*) During the final strikes, Plaintiff alleges Defendant Rojas was "kneeling down, surrounded by numerous officers and in no immediate danger determined that the Plaintiff was still a threat making a mindful professional decision to continue an onslaught of a malicious attack." (*Id.* at 5-6.) Plaintiff contends Defendant Roque "lied and falsified documents," along with Defendants Arias and Freitas, accusing Plaintiff of assaulting Defendant Rojas and attempting to take him baton, "justifying the force used on Plaintiff." (Doc. 1 at 6.)

24
25
26
> Plaintiff alleges the force used by Defendant Rojas was excessive and caused him great pain and injuries. Plaintiff contends he reported the use of force and assault and battery by Defendant Rojas in a videotaped interview and addressed it through the grievance process, exhausting his administrative remedies. (Doc. 1 at 6.)

27

28   (Doc. 10 at 3-4.) Liberally construing Plaintiff's claim against Defendant Rojas, the Court found

1    Plaintiff plausibly alleged an Eighth Amendment excessive force claim because Rojas allegedly

2    struck Plaintiff "with unnecessary and unwarranted baton blows to Plaintiff's left arm, despite

3    Plaintiff being restrained and prone during the baton strikes, and when Plaintiff was not a threat."

4    (*Id*. at 5.)[3]

5            IV.     **DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**[4]

6           Defendant submitted the following statements of undisputed facts:

7         1.  Plaintiff is a state prisoner serving a life sentence with the possibility of parole. At all

8             times relevant to his complaint, Plaintiff Cage was housed at California State Prison –

9             Corcoran (CSPCOR).

10        2.  At all times relevant to the complaint, Defendant Rojas was employed as a

11            Correctional Officer at CSP-COR.

12        3.  Plaintiff brings his complaint against Defendant in his individual and official capacity.

13        4.  On May 13, 2022, Plaintiff had a visit with his wife via video.

14        5.  After the visit with his wife, Plaintiff was escorted to the 4A1R holding cell at CSP-

15            COR.

16        6.  Plaintiff refused to comply with orders to submit to restraints and be escorted to his

17            assigned cell for several hours. During this period, Plaintiff paced back and forth in

18            the holding cell, struck aggressive postures, and verbally encouraged staff to use force,

19            saying "you're going to have to come get me" in response to orders to submit to

20            restraints. Plaintiff also repeatedly cursed and yelled at staff.

21
22   [3] Following screening, Plaintiff's remaining claims against the other named defendants were dismissed. (*See* Docs. 11, 13 & 14.)

23   [4] Because Plaintiff did not file an opposition, he neither admitted nor denied the facts set forth by Defendants as undisputed nor filed a separate statement of disputed facts. Local Rule 260(b). A verified complaint in a pro se civil

24   rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. *McElyea v.*

25   *Babbitt,* 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir. 1985); Fed. R. Civ. P. 56(e). Here, because Plaintiff has not complied with Rule 260(b), the Court deems Plaintiff to have admitted those facts not disputed by his complaint or other submissions. *See, e.g., Beard v. Banks*, 548 U.S.

26   521, 527 (2006) ("by failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's] statement"); *Brito*

27   *v. Barr*, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal. July 15, 2020) (deeming defendant's undisputed facts as admitted after plaintiff failed to comply with Local Rule 260(b)); *see also Jones v. Blanas*, 393

28   F.3d 918, 923 (9th Cir. 2004).

1   7.  Correctional and mental health staff made several attempts to deescalate Plaintiff's

2       aggressive behavior and encourage his voluntary compliance with orders. Correctional

3       staff initiated dialogue and used verbal persuasion to urge Plaintiff to submit to

4       restraints. Plaintiff failed to respond positively to clinical intervention initiated by

5       Senior Psychologist Specialist Ward, which included a cool-down period. In addition,

6       Plaintiff covered his face with his shirt and failed to comply with orders to submit to

7       restraints when sprayed three times, with approximately three minutes in between each

8       burst, with chemical agent intended to urge his compliance without the use of

9       additional force.

10  8.  Plaintiff's continued refusal necessitated the cell extraction as a "last resort" to

11      maintain institutional safety.

12  9.  Defendant was the assigned baton officer for the four-member cell extraction team

13      consisting of himself and Correctional Officers Reyes, Arias, and Freitas.

14  10. Defendant carried a Monadnock Expandable Baton in his right hand to protect the

15      members of the cell extraction team in the event that the inmate were to become

16      violent.

17  11. When Defendant and officers Reyes, Arias, and Freitas entered the holding cell,

18      Plaintiff failed to comply with their orders to "get down" into a prone position and

19      repeatedly hit the shield carried by Reyes, the assigned shield officer, with his hands.

20      After Reyes cornered Plaintiff in the holding cell, Plaintiff slid out from behind the

21      shield and reached for the baton Defendant carried in his right hand with his right

22      hand. Plaintiff then grasped Defendant's right forearm, with his left hand. Defendant

23      carried his baton in his right hand. Defendant verbally ordered Plaintiff to "let go" but

24      Plaintiff failed to comply. To overcome Plaintiff's grasp and prevent him from

25      accessing the baton, Defendant deployed approximately sixteen strikes to Plaintiff's

26      left arm with the closed baton. Defendant's motion was limited due to Plaintiff's grasp

27      on his arm.

28  12. Defendant reassessed the situation after each strike, as stated in his report. Defendant

7

1          continued striking Plaintiff until Plaintiff's grasp on his forearm was removed.

2      13. Defendant observed Plaintiff to be uninjured after the cell extraction.

3      14. Following the cell extraction, Psychiatric Technician Orduno conducted a CDCR 7219

4          Medical Report of Injury or Unusual Occurrence on Plaintiff. That report does not

5          show that any part of Plaintiff's body was injured following the cell extraction; it

6          indicates Plaintiff's exposure to the chemical agent sprayed at him before the

7          extraction but fails to show any physical injury caused by Defendant's use of force.

8          Further, the report states that Plaintiff's statement of the circumstances of his injury or

9          the occurrence was "No, I'm good," showing that Plaintiff was uninjured following

10          the extraction.

11      15. Plaintiff was decontaminated after Orduno's examination. He subsequently

12          complained of chest pain and was taken by emergency vehicle to Correctional

13          Treatment Center (CTC) but refused all treatment at CTC.

14      16. Following the cell extraction, Plaintiff was issued a Rules Violation Report ("RVR")

15          for "Willfully delaying a Peace Officer in the performance of duties, resulting in a

16          Controlled Use of Force." Following a disciplinary hearing, Plaintiff was found guilty

17          of the disciplinary charge and sentenced to the loss of 90 days of credit.

18  (Doc. 39-14 [hereafter "UDF"].)

19      **V.      DISCUSSION**

20      Defendant asserts the following arguments: (1) Plaintiff's claim fails as a matter of law

21  because his claim is *Heck*-barred; (2) the Eleventh Amendment bars Plaintiff's official capacity

22  claim; (3) Plaintiff cannot sustain his excessive force claim because Defendant did not act

23  maliciously or sadistically to harm him as (a) the application of force was necessary because

24  Plaintiff reached for Defendant's baton and grasped Defendant's forearm during the cell

25  extraction, (b) Defendant only used necessary and appropriate force to overcome Plaintiff's grasp

26  on Defendant's wrist and to prevent Plaintiff from taking his baton, (c) Defendant's use of force

27  was proportional to the threat posed by Plaintiff's attempt to access Defendant's baton, (d)

28  Plaintiff suffered limited, if any, injuries as a result of Defendant's use of force, and (e)

1    Defendant attempted to temper the severity of a forceful response by ordering Plaintiff to release

2    his grip on Defendant's arm; (4) the Prison Litigation Reform Act bars Plaintiff's claim for

3    compensatory damages without a showing of physical injury; and (6) Defendant is entitled to

4    qualified immunity. (Doc. 39-1.)

5          ***A.  Defendant Is Entitled to Summary Judgment on Plaintiff's Eighth***
             ***Amendment Excessive Force Claim***

6

7          The Court has reviewed all the evidence presented, including the exhibits and video

8    footage, and supporting declarations of defense counsel, Defendant Rojas, P. Williams, R. Roque,

9    E. Cortez, and P. Arias.

10                        1.   The Use of Force Was Necessary

11         Defendant has presented evidence the use of force was necessary under the circumstances

12   because after several hours of aggressive behavior and refusal to comply with orders, Plaintiff

13   reached for Defendant's baton and grasped Defendant's forearm and/or wrist during the cell

14   extraction, making it necessary to apply force to prevent Plaintiff was accessing the baton and

15   causing harm to correctional officers or requiring a greater, potentially lethal response. UDF 6-8,

16   10-12. Thus, Defendant has met his initial burden by demonstrating there is no genuine dispute as

17   to any material fact concerning the first element of Plaintiff's excessive force claim. Fed. R. Civ.

18   P. 56(a).

19                  2.   Only Necessary and Appropriate Force Was Used

20         Defendant has presented evidence demonstrating he employed only necessary and

21   appropriate force to overcome Plaintiff's grasp on his forearm and to prevent Plaintiff's access to

22   his baton and to ensure institutional safety and security. UDF 6-12, 16. Thus, Defendant has met

23   his initial burden by demonstrating there is no genuine dispute as to any material fact concerning

24   the second element of Plaintiff's excessive force claim. Fed. R. Civ. P. 56(a).

25                  3.   The Use of Force Was Proportional to the Threat Posed

26         Defendant has presented evidence demonstrating his use of force was proportional to the

27   threat posed by Plaintiff's attempt to access his baton. UDF 6-12. Thus, Defendant has met his

28   initial burden by demonstrating there is no genuine dispute as to any material fact concerning the

1    third element of Plaintiff's excessive force claim. Fed. R. Civ. P. 56(a).

2                        4.   Plaintiff's Injuries Are Unsupported

3          Defendant has presented evidence demonstrating that Plaintiff was uninjured following

4    the encounter on May 13, 2022. UDF 13-15. Thus, Defendant has met his initial burden by

5    demonstrating there is no genuine dispute as to any material fact concerning the fourth element of

6    Plaintiff's excessive force claim. Fed. R. Civ. P. 56(a).

7                 5.   Efforts Were Made to Temper the Severity of the Response

8          Defendant has presented evidence demonstrating that he made efforts to temper the

9    severity of his response. UDF 11-12; *see* UDF 6-8, 13-15. Thus, Defendant has met his initial

10   burden by demonstrating there is no genuine dispute as to any material fact concerning the fifth

11   and final element of Plaintiff's excessive force claim. Fed. R. Civ. P. 56(a).

12                     6.   Plaintiff Has Not Met His Burden of Production

13         As noted above, Defendant has met his initial burden, as to each element of Plaintiff's

14   excessive force claim, by demonstrating there is no genuine dispute as to any material fact. Fed.

15   R. Civ. P. 56(a). Therefore, the burden shifts to Plaintiff as the non-moving party to establish that

16   a genuine issue as to any material fact actually does exist. *Matsushita*, 475 U.S. at 586. Plaintiff

17   has failed to do so; he has tendered no evidence to support his claim in this action. Fed. R. Civ. P.

18   56(c); *Matsushita*, 475 U.S. at 586 n.11; *Henry*, 983 F.2d at 950.

19         Further, the assertions made in Plaintiff's complaint do not establish the existence of any

20   factual dispute. *See* Fed. R. Civ. P. 56(c); *Beard*, 548 U.S. at 527; *McElyea*, 833 F.2d at 197-98.

21   Plaintiff has completely failed to offer proof concerning the essential elements of his Eighth

22   Amendment excessive force claim against Defendant Rojas. *Celotex*, 477 U.S. at 322.

23         Here, the record taken as a whole would not lead a rational trier of fact to find for

24   Plaintiff. *Matsushita*, 475 U.S. at 587. In sum, Defendant is entitled to summary judgment.

25                        **B.  The Remaining Arguments**

26         The Court declines to address Defendant's other arguments concerning the *Heck*-bar,

27   official capacity, PLRA bar, and qualified immunity because it has determined Defendant is

28   entitled to judgment on the merits as demonstrated above.

1

## VI.    CONCLUSION AND ORDER

2       Based on the foregoing, this Court **HEREBY ORDERS** that:

3       1.  Defendant's motion for summary judgment (Doc. 39) is **GRANTED**; and

4       2.  The Clerk of the Court be directed to enter judgment in favor of Defendant Rojas and

5            to close this case.

6    IT IS SO ORDERED.

7       Dated:    **July 14, 2025**                    _____

8                                         UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28